# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:17-cv-100-FDW

| | |
|---|---|
| ALFUTIR KAREEM I-DEEN MAYWEATHER,[1] | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )     **ORDER** |
| W. DAVID GUICE, et al., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1). He is proceeding *in forma pauperis*. See (Doc. No. 5).

## I. BACKGROUND

*Pro se* Plaintiff, who is currently incarcerated at the Marion Correctional Institution, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 with regards to incidents that allegedly occurred at Hyde C.I. and Marion C.I. He names as Defendants: Department of Public Safety ("DPS") Director W. David Guice; DPS Commissioner George T. Solomon; Hyde C.I. Security Risk Group Captain Auer; Hyde C.I. Investigating Officer Sgt. Spencer; Hyde Disciplinary Hearing Officer Locklear; Marion C.I. Correctional Administrator H. Corpening; Marion C.I. Programs Director G. Swink; Marion C.I. Correctional Planner J. Jenkins; Marion C.I. Unit Manager Keith Turner; and Marion C.I. Lieutenant of Shipping and Receiving Banks.

Construing the Complaint liberally and accepting the allegations as true, Plaintiff asked a sergeant at Hyde C.I. on August 8, 2016, for complete copies of legal documents that Plaintiff

---

[1] According to the North Carolina Department of Public Safety's website, Plaintiff's name is Alfutir K. Mayweather.

needed for his habeas corpus. The sergeant said the prison did not make copies of legal materials and that Plaintiff had to contact prisoner legal service. Plaintiff said that legal services does not make photocopies for inmates and carbon paper would not help him because he needed copies of documents that were not handwritten and could only be copied through a photocopier. The sergeant refused to make complete copies of legal documents that Plaintiff needed for his habeas corpus. (Doc. No. 1 at 7). Plaintiff claims that DPS failed to provide the material he needed to "research [his] case to discover any errors in [his] case that could not be discovered by prison legal services reviewing [the] transcript." (Doc. No. 1 at 13).

A few weeks later, Plaintiff was called to "receiving" where a sergeant told him a grievance Plaintiff had written about the photocopies had been denied and DPS policy only allowed the prison to give inmates writing materials and carbon paper. (Doc. No. 1 at 7). Plaintiff showed "them" case law stating that North Carolina was to provide prisons with regional libraries and legal materials including federal statutes, state statutes, case reporters, a criminal law reporter, and a prison rights book. Plaintiff filed another grievance complaining that staff refused to send out his mail although he was indigent and had no money in his account. (Doc. No. 1 at 8).

Three weeks after Plaintiff filed his grievance appeal, Captain Auer called him to receiving and asked about an assault that happened on October 15, 2016. Plaintiff said he did not assault anybody. Plaintiff was placed in segregation and charged with gang activity and instigating an assault. The person in segregation who committed the assault, inmate Antwon Horne, wrote to Auer saying that Plaintiff had nothing to do with the assault Horne committed. Plaintiff and Horne requested that the investigating officer, Sergeant Spencer, come get another statement from Horne, but Spencer never returned. Captain Auer charge Plaintiff with instigating an assault even after Horne wrote to him explaining that Plaintiff was not involved. Auer charged Plaintiff with the

2

infraction because he wanted Plaintiff because of the complaints he was writing regarding his rights to access the courts.

Plaintiff had a disciplinary hearing on October 28, 2016. Plaintiff tried to give Hearing Officer Locklear a written statement from inmate Horne saying that Plaintiff did not order him to assault anyone. Locklear did not accept the statement, saying it must come from the investigating officer. Plaintiff explained that he had asked Spencer to take a statement from Horne but that Spencer never returned. Locklear found Plaintiff guilty without sending the case back for reinvestigation. Locklear punished him with 60 days in segregation, took away his phone and canteen privileges, placed him in I-Con housing for six months, and sent him to Warren C.I.

Plaintiff was taken to Marion C.I. around November 21, 2016, where he was forced to participate in the "challenge program." Upon Plaintiff's arrival at Marion C.I., Lieutenant Banks had officers take the three bags of property that were transported with Plaintiff, leaving him with only 25 sheets of paper, two books, and legal papers. Plaintiff told a sergeant and Banks that his property complied with DPS policy and that taking his property without due process violated the constitution. Banks told Plaintiff that he had to ship his property home or it would be destroyed, and that if he did not want to enter the "challenge program" he was subject to disciplinary action (Doc. No. 1 at 10). Plaintiff told Banks and the sergeant that he did not have an address to send his things to because his mother was moving and did not want to risk losing his property. Plaintiff's property was placed in a box and the sergeant said he would give Plaintiff time to try to get his mother's new address. Later than day, Plaintiff received three pairs of boxers, three t-shirts, and one pair of pants that were supposed to last him the whole seven-day week.

When Plaintiff arrived at Marion C.I., Institute Program Director Swink came and explained the challenge program and gave Plaintiff orientation. (Doc. No. 1 at 11). Plaintiff told

3

Swink that he did not want to be in the program and the program was keeping him in his cell 23 hours, he had no recreation far over the time he received for I-con and it was another punishment that violated the constitution. Swink said the program lasted 15 months and that, in the tenth month, Plaintiff would be coming out of the cell much more often. Plaintiff also told Swink the problem with his property and Swink said the program had a different policy than DPS. Plaintiff told Swink the program could not make rules over DPS policy and, as long as his property did not violate DPS rules, he should be permitted to keep it.

Plaintiff stayed in the challenge program for three months during which time he was locked in his cell 48 hours and given one hour of recreation. Only on the weekends did he come out of his cell after 23 hours for recreation. In February 2017, Plaintiff was taken to another unit for phase 1, part 2 of the challenge program in which his legs and wrists were chained to a metal desk for one to one-and-a-half hours once per week while he was forced to watch a video. (Doc. No. 1 at 12). Swink and the program instructor threatened Plaintiff with remaining in phase 1 and being sent to segregation if he did not do the homework assignment or participate in the group where he was chained to the desk.

Unit Manger Turner rejected Plaintiff's grievances about the conditions of his confinement in the challenge program without processing them, saying that Plaintiff could not file a grievance while another was on appeal even though the earlier appeal addressed different subject-matter.

Plaintiff seeks declaratory judgment, compensatory and punitive damages, injunctive relief with regards to his claims of access to courts and double jeopardy, and such other relief that the Court deems appropriate.

## II.    STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the

Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must

5

articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1)** **Parties**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004). The Rules require a short and plain statement of the claims. Fed. R. Civ. P. 8(a)(2). Conclusory allegations, unsupported by specific allegations of material fact are not sufficient. Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990). A pleader must allege facts, directly or indirectly, that support each element of the claim. Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002).

The body of the Complaint refers to individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). Moreover, Plaintiff has made no factual allegations whatsoever with regards to Defendants Guice, Solomon, Corpening, or Jenkins. The Complaint is insufficient to proceed with regards to these Defendants as well as individuals who are not formally named and will be dismissed as to them.

**(2)** **Access to Courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff has failed to state a claim for the denial of access to the courts because he has not alleged that he had a non-frivolous post-conviction or civil rights legal claim that was frustrated or impeded by Defendant's actions. Plaintiff's claim that he was deprived of access to the courts is facially insufficient and will be dismissed.

**(3)** **Retaliation**

Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d at 1347. To succeed on such a claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. See American Civil Liberties Union of Maryland, Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Board of

7

Governors of Univ. of North Carolina, 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995); accord Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); McDonald v. Hall, 610 F.2d 16, 18–19 (1st Cir.1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff alleges that Defendant Auer charged Plaintiff with the infraction in retaliation for his complaints about being denied access to the courts. The retaliation claim against Defendant Auer is sufficient to pass initial review.

**(4)** **Conditions of Confinement**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-

8

34.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298 (citing Rhodes, 452 U.S. at 347).

Plaintiff claims that he is experiencing the following conditions of confinement in the challenge program: confiscation of all his property except two books, 25 sheets of paper, and legal paper; provision of only three shirts and boxers, and one pair of pants for a whole week; being locked in cells for 48 hours with 1 hour of recreation, for a year; shackling to a desk once a week for a one- to one-and-a-half hour video; and homework assignments.

These conditions do not constitute a sufficiently serious and extreme deprivation of the minimum civilized measure of life's necessities as contemplated by the Eighth Amendment. See generally Mitchell v. Rice, 954 F.2d 187, 191 (4th Cir. 1992) (by adopting a totality of the circumstances test, the court has never held that the denial of out-of-cell exercise opportunities is *per se* unconstitutional); Sweet v. South Carolina Dep't of Corr., 529 F.2d 854, 866 (4th Cir. 1975) (restriction of two exercise periods of one hour per week may not ordinarily transgress constitutional standards if confined to a relatively short period of time but that result may be different where the restriction has extended over a period of years and is likely to extend indefinitely); see, e.g., Hemphill v. Cramer, 2016 WL 8540312 (D.S.C. April 26, 2016) (dismissing deliberate indifference claim with regards to the lack of outside recreation because

9

plaintiff failed to allege that he faced a substantial risk of serious harm); Collins v. Ward, 544 F.Supp. 408, 413 (S.D.N.Y. 1982) (inmate failed to state an Eighth Amendment claim because dirty cells for three days, no exercise for three days, no visitors for five days, confinement indoors for seven days, and no radio for eight days "simply do not make out a claim of 'barbarous' or 'shocking' treatment."). Therefore, Plaintiff's claims of cruel and unusual conditions of confinement are insufficient to proceed and will be dismissed.

**(4)** **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV.

**(a) Property**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state

prisoner).

It appears that Plaintiff is alleging that Defendants Banks and Swink confiscated his property pursuant to challenge program rather than as the result of a random, unauthorized act. Therefore, he has stated a plausible due process claim for the deprivation of his personal property and this claim will be permitted to proceed against Defendants Banks and Swink.

**(b) Grievances**

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

Petitioner alleges that various grievances were rejected, returned to him, and denied at the institution level and on appeal. Because Plaintiff has no federal constitutional right to engage in the prison grievance procedure, any alleged violation of that procedure cannot constitute a due process violation. Therefore, Plaintiff's due process claim with regards to his prison grievances will be dismissed.

**(c) Disciplinary Proceedings**

Prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits or solitary confinement, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is

illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-71. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

To the extent Plaintiff attempts to assert a claim for failure to investigate against Sergeant Spencer, he fails to do so because he had no constitutional right to an investigation. See generally DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.")); see, e.g., Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (arrestee had no constitutional right to internal investigation of excessive force claim); Savage v. County of Stafford, Va., 754 F.Supp.2d 809 (E.D. Va. 2010) (deputy sheriff's alleged failure to document and investigate arrestee's alibi did not violate due process). The due process claim against Defendant Spencer will thus be dismissed.

Plaintiff further alleges that Defendant Locklear refused to allow him to present evidence at his disciplinary hearing. These allegations state a plausible due process claim against Defendant Locklear and this claim will be permitted to proceed. Therefore, Plaintiff's due process claim with regards to the disciplinary hearing will be permitted to proceed against Defendant Locklear.

**(d) Challenge Program**

A change in the conditions of a prisoner's confinement that does not exceed the scope of the original sentence only gives rise to a federally protected liberty interest if it imposes atypical and significant hardship in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472 (1995).

Plaintiff contends that he was enrolled in the challenge program without due process. However, he has failed to adequately allege that he had a protect liberty interest in remaining outside of the challenge program. Therefore, his claim that he was deprived of due process by being required to participate in the program facially insufficient and will be dismissed.

**(5)    Equal Protection**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to

determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993).

The Fourth Circuit does not recognize prisoners as "a suspect class." Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997). When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. See Morrison, 239 F.3d at 654–55. In a prison context, therefore, the court must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225 (2001). This deferential standard applies "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny;" however, this more deferential review does not ignore the concerns that justify application of a heightened standard outside of the prison context. Morrison, 239 F.3d at 655-56.

Petitioner contends that Sergeant Spencer and Lieutenant Banks violated equal protection by failing to collect a statement from inmate Horne with regards to the disciplinary matter and confiscating his property pursuant to the challenge program.

Plaintiff fails to allege that he was treated differently from similarly situated individuals as a result of intentional discrimination. Plaintiff's equal protection claims against Defendants Spencer and Banks are facially insufficient and will be dismissed.

**(6) Double Jeopardy**

The Fifth Amendment's Double Jeopardy Clause bars prosecution and punishment twice

for the same offense. See Brown v. Ohio, 432 U.S. 161 (1977).

Plaintiff contends that DPS violated the Double Jeopardy Clause by punishing him twice for his disciplinary infraction by placing him in the challenge program after already imposing 60 days of segregation.

Plaintiff's reliance on the Double Jeopardy Clause is misplaced because prison disciplinary proceedings are not part of a criminal prosecution, and therefore, the Double Jeopardy Clause does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); United States v. Green, 508 Fed. Appx. 206 (4th Cir. 2013) (Double Jeopardy Clause did not protect defendant from being criminally indicted for the same misconduct that resulted in prison disciplinary charges); Anderson v. Padula, 2006 WL 1075003 at *4 (D.S.C. Apr. 19, 2006) (concluding the double jeopardy clause was not implicated when the plaintiff was sanctioned twice for one prison disciplinary charge, first through an informal resolution and then through a disciplinary hearing regarding the same charge). Plaintiff's double jeopardy claim is therefore not cognizable in this § 1983 action and will be dismissed.

## IV. CONCLUSION

The retaliation claim against Defendant Auer and the due process claims against Defendants Banks, Swink, and Locklear are plausible and have passed initial review. Plaintiff may file a superseding Amended Complaint within 14 days in which he may attempt to add parties and cure the deficiencies identified in this Order.

**IT IS, THEREFORE, ORDERED** that:

1. The retaliation claim against Defendant Auer and the due process claims against Defendants Banks, Swink, and Locklear survive initial review under 28 U.S.C. § 1915.

2. The remaining claims are dismissed as frivolous and for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

3. Plaintiff shall have **14 days** in which to file a superseding Amended Complaint in accordance with this Order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint within the time limit set by the Court, this action will proceed on the original Complaint, (Doc. No. 1).

4. The Clerk is directed to mail a copy of the Complaint, (Doc. No. 1), and a new Section 1983 complaint form to Plaintiff.

5. **IT IS FURTHER ORDERED THAT** Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for **Defendants Auer, Banks, Swink,** and **Locklear,** who are current or former employees of NC DPS.

Signed: August 14, 2018

Frank D. Whitney
Chief United States District Judge