# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:17-cv-100-FDW

| | | |
|---|---|---|
| **ALFUTIR KAREEM I-DEEN MAYWEATHER,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **W. DAVID GUICE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, (Doc. No. 40).

## I.      BACKGROUND

*Pro se* incarcerated Plaintiff filed this civil rights suit pursuant to 42 U.S.C. § 1983 for incidents that allegedly occurred at the Hyde and Marion Correctional Institutions.[2] Plaintiff's Amended Complaint, (Doc. No. 11), passed initial review on claims against Defendants Christopher Auer, W. David Guice, and George Solomon for denying him access to the courts, against Toni Banks, Guice, Victor Locklear, and Gregory Swink for violating due process, and against Auer for retaliation. Defendants' Motion for Summary Judgment is ripe for consideration.

**(1)      Amended Complaint** (Doc. No. 11)

Plaintiff alleges that he asked North Carolina Prisoner Legal Services ("NCPLS") for

---

[1] According to the North Carolina Department of Public Safety's ("NCDPS") website, Plaintiff's name is Alfutir K. Mayweather. See https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view; Fed. R. Ev. 201.

[2] Plaintiff's address of record is at the Mountain View C.I. but, according to the NCDPS website, he is currently housed at Marion C.I. Plaintiff is reminded that it is his responsibility to keep the Court apprised of his current address at all times.

caselaw but they declined, saying there is not funding to provide caselaw to inmates. Without caselaw, there is no way for an inmate to know he has a constitutional claim or an adequate opportunity to present such a claim. It is insufficient for NCPLS to research a case because, even if NCPLS does not find any error, that does not mean that no error exists that could be raised on post-conviction relief or in a civil suit. Defendants Solomon and Guice have failed to correct NCPLS's practices, which makes them liable. Defendants Guice and Solomon enforce a policy of only providing inmates with carbon paper. Inmates are not given access to caselaw or case reports to properly present their claims.

Plaintiff wrote a grievance on August 8, 2016, about the materials that North Carolina prisons are supposed to provide inmates to secure the right to access the courts. Sergeant Auer responded to Plaintiff's grievance. At the time the grievance was filed, Plaintiff was preparing a habeas petition addressing an alleged Fourth Amendment violation with regards to a traffic stop in his criminal case for which Plaintiff's motion to suppress was denied. Plaintiff appealed in 2013 but, in 2015, the United States Supreme Court decided Rodriguez v. United States, 575 U.S. 348 (2015), holding that a dog sniff of a vehicle that prolongs a stop that is not supported by reasonable suspicion violates the Fourth Amendment. The existence of a reasonable suspicion was never addressed at trial or on appeal. He sought assistance in raising this claim in a habeas petition but NCPLS refused to help Plaintiff. As a result, Plaintiff was unable to adequately prepare a response to the state's motion for summary judgment and his claim was denied.

Plaintiff's Motion for Appropriate Relief ("MAR") and petition for writ of certiorari were denied because Plaintiff could not properly argue or present his constitutional claims to the court. Plaintiff's federal habeas petition that he filed during his grievance was dismissed because Plaintiff was not given access to case law that would allow him to adequately argue and present

his case to the court. Plaintiff's ability to prevail in the instant § 1983 civil suit and future appeal are "slim to none" without being provided with caselaw. (Doc. No. 11 at 19).

Officer Auer charged Plaintiff with instigating an assault which Plaintiff did not commit just to get Plaintiff away from Hyde C.I. due to the grievances he filed about violations of access to the courts. Disciplinary Hearing Officer ("DHO") Locklear refused to allow Plaintiff to present evidence that Plaintiff had nothing to do with the assault. Plaintiff was found guilty of the infractions that he did not commit.

As a result of the infractions, Plaintiff lost his phone privileges for six months, during which time two family members died, was placed on lockdown for 12 months, was demoted from medium custody to close custody status, lost days off of his sentence, and was enrolled in the Challenge Program as part of which property was confiscated to from him. Defendants Corpening and Jenkins are "over the challenge program" and enforce the policy of taking inmates' property. (Doc. No. 11 at 12). Defendants Swink and Banks confiscated Plaintiff's property (books and movie scripts that Plaintiff wrote) even though it was not over the prison's property limit. Swink and Banks followed the prison policy created or enforced by Corpening and Jenkins. Defendant Guice directed officers to take inmates' property when they enter the challenge program. Defendants Corpening and Jenkins are "over the challenge program" and enforce the policy of taking inmates' property. (Doc. No. 11 at 12). They followed the prison policy created or enforced by Corpening and Jenkins. Defendant Guice directed officers to take inmates' property when they enter the challenge program.

Plaintiff seeks injunctive relief, compensatory and punitive damages, and any other relief the Court deems appropriate.

**(2)** **Defendants' Motion for Summary Judgment** (Doc. No. 40)

Plaintiff cannot show that Defendants Auer, Guice and Solomon violated his constitutional right of access to the courts. Although inmates have a constitutional right to a reasonably adequate opportunity to present claimed violations of fundamental rights to the courts, there is no right to a law library or legal assistance. Plaintiff's claim does not give rise to plausible entitlement to relief because he cannot show an actual injury. He has not shown an impediment to his ability to communicate with the courts or file papers. Plaintiff has competently represented himself in other actions in the North Carolina state courts and in federal district court.

Plaintiff cannot show that Defendant Auer retaliated against him for filing grievances complaining about his alleged denial of access to the courts. However, Plaintiff was not placed in restrictive housing and found guilty of infractions because he filed grievances. Auer had Plaintiff placed in restrictive housing and he was charged with disciplinary infractions because there was evidence that Plaintiff ordered a gang-related assault. Plaintiff cannot demonstrate a retaliatory adverse act and causation. The claims against Auer are too conclusory with no supporting facts and no resulting injury to support the high standards for a retaliation claim.

Assuming that Plaintiff suffered the loss of a liberty interest, judgment should be entered for Defendant Locklear because the record establishes as a matter of law that Plaintiff's due process rights were not violated by Locklear. It is undisputed that Plaintiff was provided notice of the disciplinary charges, the right to a hearing, and the opportunity to defend the charges. The record shows that Locklear reviewed the statement of an inmate witness requested by Plaintiff as well as Plaintiff's witness statement. Locklear explained the charges and disciplinary appeal rights to Plaintiff. Plaintiff cannot rebut Locklear's showing that Plaintiff was granted due process.

Defendant Swink was not involved in, or responsible for, conducting searches or inventories of offender property upon arrival at Marion C.I. and Swink was not present during the

search and inventory of Plaintiff's property when he was transferred to Marion on November 22, 2016. Baughman inventoried and signed Plaintiff's personal property list and documented it on DC-160 forms dated November 22, 106. The DC-160 forms signed and dated by Plaintiff in the "disposition" column shows that he either indicated the personal property be mailed, retained by him in his cell, or placed in storage. This provided Plaintiff notice and he was afforded the opportunity to adequately dispose of his property that exceeded the reasonable limits for institutional safety and security.

Defendants are entitled to summary judgment for the claims in their official capacities because such claims are not against "persons" and sovereign immunity prohibits official capacity claims for damages. Plaintiff's claims for declaratory and injunctive relief are moot because Plaintiff has been transferred away from Hyde and Marion. Further, qualified immunity shields Defendants from claims for monetary damages in their individual capacities.

 **(3)**   **Plaintiff's Response** (Doc. No. 44)

Plaintiff was informed of the importance of responding to Defendants' motion as well as the legal standard applicable to summary judgment motions. (Doc. No. 43).

With regards to his claim regarding access to the courts, Plaintiff argues that he filed grievance on August 14, 2016, while at Hyde C.I., complaining he was not being provided necessary materials to challenge his conviction *pro se*. Plaintiff was called to intake about a week later by a sergeant who explained that he wrote to NCPLS a number of times but they said they did not have staff or funds to provide plaintiff with the material. At the time Plaintiff filed the grievance, he was preparing a post-conviction habeas corpus petition. Plaintiff had lost his MAR and petition for writ of certiorari because he had not included in his MAR a claim of ineffective assistance of counsel, which rendered the claims in his MAR procedurally barred. When Plaintiff

filed his MAR on February 7, 2014, he did not know what ineffective assistance of counsel or procedural bar were. NCPLS wrote Plaintiff a letter saying they would not represent him and refused to research his case or provide any caselaw and only provided him with a post-conviction procedure guide. Plaintiff was not given an opportunity to fully research or present his claims and had to rely on information from another inmate to state his MAR claims. Plaintiff's MAR was denied because he did not establish the necessary facts by a preponderance of the evidence, he did not show the existence of the asserted grounds for relief, and he did not set forth prejudice. Although Plaintiff alleged in his MAR that his rights had been violated, he did not have any evidence to file with his MAR to support his claims. Nor did he have or file any declarations or affidavits with his MAR, writ of certiorari, or summary judgment in his habeas action because he did not know how to establish a material issue of fact.

After his MAR and certiorari petitions were denied, Plaintiff filed a grievance to get NCDPS to uphold the obligation to provide meaningful access to the courts so that Plaintiff could research possible habeas claims. Auer responded to Plaintiff's grievance, stating that inmates are provided with carbon paper and writing implements with which a legal services contractor may be contacted, but that NCDPS does not provide typewriters or photocopying services. Plaintiff's grievance and grievance appeal were dismissed.

While proceeding *pro se* in his habeas corpus case, Plaintiff discovered claims of prosecutorial misconduct and ineffective assistance of counsel that show he did not have a fair trial. (Doc. No. 44-1 at 6). Plaintiff did not receive a transcript of the closing argument or the prosecutor's memorandum of law in response to Plaintiff's motion to suppress until 2015. Plaintiff discovered at that time that counsel was ineffective for providing him with case law in support of suppression that had been overturned. Plaintiff did not know that standby counsel's failure to

provide him with cases showing that he did not have standing to contest the vehicle search, and his provision of caselaw that had been overturned, was ineffective assistance of counsel.

Counsel's ineffectiveness caused Plaintiff to reject a favorable plea offer. Plaintiff lost his suppression motion, had to stand trial, and received twice the amount of time he was offered in the plea bargain. He would have taken the plea but for the ineffective assistance of counsel. Plaintiff did not know he could raise this issue as a claim of ineffective assistance of counsel until another inmate showed him relevant case law.

After discovering these claims of ineffective assistance of counsel and "possible' prosecutorial misconduct, Plaintiff filed a § 1983 access to courts claim. North Carolina is not paying NCPLS for contracted legal services pursuant to an order by the Eastern District of North Carolina. This which hindered Plaintiff from pursuing his possible claims of prosecutorial misconduct and ineffective assistance of counsel, and from foreseeing that he would be procedurally barred from presenting these claims.

The denial of access to the courts resulted in actual injury because Plaintiff was hindered from pursuing his post-conviction legal claims. Policy by Solomon stops prison officials from giving prisoners any access to the courts when NCPLS decides not to represent them and the prisoner is forced to proceed without help. Defendants argue that Plaintiff competently presented his habeas case whereas Plaintiff just copied what his other lawyer wrote in the past. Plaintiff's argument has nothing to do with the habeas. His argument is that, without being provided with access to caselaw/legal material, he was being hindered from pursuing claims he later found out had been procedurally barred from presenting to the trial court. There is no way for a prisoner to pursue legal claims unless he can research other legal claims. NCPLS gave him a post-conviction procedure guide but did not provide research, copying or other support services. Plaintiff made

numerous mistakes in this litigation and in post-conviction because he did not have legal materials.

Solomon is liable as director of prison who signed the policy & procedure saying complaints should be forwarded to him. After the Plaintiff's complaint was forwarded to Solomon's office, he still did nothing to assist Plaintiff in preparing and filing habeas. Commissioner and director of prisons are obligated to ensure prisoners have rights of access to courts and make sure their employees are properly trained to handle complaints that those rights are being denied by the legal service source, here, NCPLS. Solomon and Guice are the head prison authorities who failed to secure the right of access to courts by overlooking whether NCPLS was being paid the correct contract amount to ensure prisoners have meaningful access to courts. Plaintiff did and still is suffering actual injury of being procedurally barred from presenting his ineffective assistance of counsel claim and "any other claims he might have which he is being hindered and prohibited from discovering due to the prison not providing him with any access to legal claims that have been decided." (Doc. No. 44-1 at 23).

With regards to Plaintiff's due process claim against Defendant Locklear regarding the disciplinary proceeding, Plaintiff was charged with B7 (provoking assault) and A14 (gang involvement) on October 18, 2016, for Antwon Horne's assault on another inmate. Horne tried to change his initial statement to reflect that Plaintiff had no involvement and had actually tried to talk Horne out of assaulting the other inmate. At Plaintiff's urging, Horne signed a statement saying that Plaintiff had nothing to do with the assault other than trying to stop it. Plaintiff tried to give Horne's statement to Locklear but Locklear would not accept it, stating he could only go by Horne's initial statement. Locklear violated Plaintiff's right to present evidence at the disciplinary hearing. At trial, Plaintiff could call Horne to prove he wrote the statement. Locklear did not put Horne's statement in the record. As a result of Locklear's actions, Plaintiff was sent to a program

where he was on lockdown for six months for something he did not do, was being "tortured" for someone else's actions. (Doc. No. 44-1 at 24).

Plaintiff states that he does not wish to proceed against the due process property claims against Banks and Swink, (Doc. No. 44-1 at 12), or the retaliation claim against Auer, (Doc. No. 44-1 at 13). Plaintiff now believes that Auer was simply doing his job and had received false information about Plaintiff provoking the assault.

Plaintiff argues that qualified immunity does not shield Defendants from money damages because Plaintiff has shown his constitutional rights were violated and Defendants knowingly violated clearly established law.

Plaintiff asks the Court to deny Defendants' Motion for Summary Judgment and grant judgment in Plaintiff's favor.

**(4)** **Evidence**[3]

**(A)** **Affidavit of Christopher Auer** (Doc. No. 42-4)

Defendant Auer was a Correctional Captain at Hyde C.I. at the relevant time. He is familiar with, has been trained in, and is experienced in, the management of inmates. Auer has direct access to the Offender Population Unified System ("OPUS"), NCDPS policies and procedures, Hyde Standard Operating Procedures ("SOPs"), and inmate grievances. Auer's affidavit is based on relevant portions of Plaintiff's OPUS records, other inmate records, and Auer's personal recollection.

Plaintiff was transferred to Hyde on July 28, 2016 and was transferred to Marion on November 22, 2016.

Auer provided the Step One response to Plaintiff's grievance filed on August 14, 2016 in

---

[3] This section is not exhaustive.

which Plaintiff complained that he was not being provided with necessary materials to challenge his conviction *pro se*.

As Facility Investigative Officer ("FIO"), it was Auer's duty to gather information about the serious assault on another inmate on October 13, 2016. Auer received confidential information from three different reliable sources that Plaintiff ordered the assault and that it was gang related. After discussing this with the DHO, Auer was advised that he only needed to use one reliable source in the disciplinary process. Auer had sufficient evidence on October 18, 2016 to prove that Plaintiff did order the assault and that it was gang related. At that time, Auer had Plaintiff put on restrictive housing and he was charged with A14 (involvement with gang or SRG) and B07 (provoke assault) disciplinary infractions. Plaintiff was found guilty of both infractions and his guilty finding was upheld on appeal. Plaintiff was demoted to close custody and transferred to an appropriate facility based on his custody level. Auer did not retaliate against Plaintiff in the disciplinary proceeding because he filed a grievance complaining about denial of access to the courts. Auer denies that, in performing his duties at Hyde he deprived Plaintiff of any right secured to him under North Carolina law or the U.S. Constitution.

**(B)**     <u>**Affidavit of Victor Locklear**</u> (Doc. No. 42-5)

Defendant Locklear was DHO at the relevant time. Locklear's duties as DHO included conducting hearings on acts of misconduct referred by facility administrators and other designated staff. He reviewed disciplinary reports, recorded relevant testimony and information, reviewed and weighed evidence, and determined whether or not the allegations were supported by the evidence. His work relied in part on information contained in the OPUS system and on NCDPS's inmate disciplinary procedures.

On October 26, 2016, Locklear conducted a disciplinary hearing on Plaintiff's A14 and

B07 infractions. Locklear reviewed the disciplinary package and did not find any procedural errors. Plaintiff pled not guilty. Locklear reviewed the statements of inmate Horne and Plaintiff at Plaintiff's request. Plaintiff requested physical evidence during the investigation but he did not indicate what type of evidence he was requesting. Plaintiff was found guilty based on evidence submitted at the hearing including confidential information, witness statements, and photographs. Plaintiff's appeal of the guilty decisions was upheld by the Chief DHO. Plaintiff was demoted to close custody and transferred to the appropriate facility based on his custody level.

In Locklear's opinion, Plaintiff's A14 and B07 disciplinary charges, investigation, hearing, appeal, and sentencing were handled in accordance with NCDPS policy and Locklear is not aware of any irregularities. The determination of guilt was supported by appropriate and sufficient evidence. No evidence was ever provided of misconduct by any employees involved in the investigation and Locklear is unaware of any misconduct. The investigation was handled by all staff professionally and according to policy.

Locklear did not willfully act in a manner intended to deprive Plaintiff of any right secured to him under North Carolina law or the U.S. Constitution.

**(C)**    **Affidavit of Gregory S. Swink** (Doc. No. 42-6)

Defendant Swink was the Correctional Programs Officer at Marion C.I. at the relevant time. He is familiar with NCDPS policies and procedures and is trained and experienced in the management of inmates.

Plaintiff was transferred to Marion on November 22, 2016 because he was accepted into the Rehabilitative Diversion Unit ("RDU") program. RDU is an alternative housing unit for inmates who were typically housed in restrictive housing due to serious, violent infractions. The RDU Program Orientation manual provides that all allowed property items must fit in a two cubic

foot box, and any overage must be mailed at the inmate's expense, donated, or destroyed. Marion's RDU cells are approximately 88x58 and the rest of the cell is 70x54, and Marion has very little available storage. Therefore, inmates are limited in the amount of personal property that is allowed in their cells in the RDU program so that inmates can safely secure their personal items and to reduce fire and sanitation hazards and security risks.

Swink was not responsible for searching or inventorying offenders' property upon their arrival at Marion. Swink was not present during the search and inventory of Plaintiff's property when he was transferred to Marion. Plaintiff's DC-160 forms show that Officer Baughman inventoried Plaintiff's property and recorded the property's disposition on November 22, 2016.

Swink denies that he willfully acted in any manner intended to deprive Plaintiff of any right secured to him under North Carolina law or the U.S. Constitution.

**(D)**     **Plaintiff's Declaration** (Doc. No. 44-6)

Plaintiff states in his verified Declaration that he moved to proceed in his North Carolina case *pro se* because his relationship with counsel deteriorated. The court did not remove counsel but had him proceed as standby counsel. Counsel did all the legal research for Plaintiff's motion to suppress and sent Plaintiff several cases. Plaintiff's main argument at suppression was based on North Carolina cases that hold that a reasonable suspicion is required before an officer can conduct a canine sniff of a legally stopped vehicle. Counsel never told Plaintiff that the U.S. Supreme Court vacated that case law in 2015 and held that officers need no heightened suspicion of criminal activity before walking a drug sniffing dog around a vehicle's exterior. Had Plaintiff been provided proper access to the courts such that he could have done his own research or if counsel had provided him with updated case law, Plaintiff would not have filed his motion to suppress and most likely would have taken the plea bargain of 70 to 90 months that the state offered.

Plaintiff did not know, at the time he filed his habeas corpus petition, that he had a claim of ineffective assistance of counsel. Plaintiff tried several times to get help with his habeas petition from NCPLS but he was denied assistance. By failing to provide inmates with services that would allow them to research potential claims, the State of North Carolina prevented Plaintiff from filing a motion alleging ineffective assistance of counsel or raising that claim on direct appeal which, in turn, caused the claims in his MAR to be procedurally barred.

Defendant Locklear refused to allow Plaintiff to present a letter signed by Horne in which he admitted cutting the inmate victim and stating that Plaintiff had nothing to do with it. Plaintiff had nothing to do with that incident other than trying to stop it. The victim inmate was Plaintiff's workout partner whom Plaintiff likes. When Plaintiff heard about what had happened, he went to high-ranking Blood members and tried to plead his case in hopes they would listen to him. There is no possibility that there is a confidential informant. Maybe Plaintiff could have done more to stop the attack on the other inmate but Plaintiff did not provoke the assault. When Plaintiff was placed in segregation, Horne was on the same block and wrote to Auer and he should let Plaintiff go. Plaintiff and Horne tried to get the investigating officer to come back and change Horne's statement but the officer never came. Horne wrote a statement for Plaintiff to take to the DHO that would show that Plaintiff was trying to convince him not to attack the other inmate but Locklear would not accept the letter, saying that he could only go by Horne's original statement. (Doc. No. 44-6 at 6).

Plaintiff was found guilty and shipped to Warren for ICON. Two weeks later he was shipped to Marion for the RDU program where all his property and legal papers were taken away. Plaintiff was on lockdown for six months before he could use the phone, which made it difficult for Plaintiff's family to research legal material. From the time Plaintiff filed his habeas corpus, he

was locked in a cell 23 hours a day, suffering for an infraction he did not commit. He had no access to a phone or to the courts.

## II.     LEGAL STANDARDS

**(1)     Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fec. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477

U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009) (quoting <u>Matsushita v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986)).

As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. <u>Celotex</u>, 477 U.S. at 324; <u>Kipps v. Ewell</u>, 538 F.2d 564, 566 (4th Cir. 1976); Fed. R. Civ. P. 56(e). However, a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991); <u>Davis v. Zahradnick</u>, 600 F.2d 458, 459–60 (4th Cir. 1979) (holding that the factual allegations contained in a verified complaint establish a prima facie case under 42 U.S.C. § 1983, so as to preclude summary judgment).

**(2)** <u>**Access to Courts**</u>

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977); <u>Hudspeth v. Figgins</u>, 584 F.2d 1345, 1347 (4th Cir. 1978). An alleging a violation of <u>Bounds</u> must show actual injury and "cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance is subpar in some theoretical sense." <u>Lewis v. Casey</u>, 518 U.S. 343, 346 (1996). Put another way, to prevail on such a claim, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded. <u>Id.</u> at 353. The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. <u>Id.</u> "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and

incarceration." Id. at 355. The Court in Lewis "disclaimed" any of the Bounds Court's "elaborations upon the right of access to the courts" that "suggest that the State must enable the prisoner to discovery grievances, and to litigate effectively once in court." Id. at 354. The Supreme Court stated that "[t]o demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires." Id.

**(3)**     **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172. Moreover, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986).

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels, 474 U.S. at 327. However, post-deprivation remedies do not satisfy the due process requirement where

the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982). Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Prison disciplinary proceedings are not part of a criminal prosecution and the full array of due process rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits or solitary confinement, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-71. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute

v. Hill, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

A claim for declaratory relief and money damages based on allegations of deceit and bias on the part of state officials involved in disciplinary proceedings that necessarily imply the invalidity of the punishment imposed is not cognizable under § 1983. Edwards v. Balisok, 520 U.S. 641 (1997).

**(4)    Retaliation**

Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). To succeed on such a claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. See Am. Civil Libs. Un. of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); accord Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); McDonald v. Hall, 610 F.2d 16, 18–19 (1st Cir. 1979). In the prison

context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

**(5)** **Sovereign Immunity**

The Eleventh Amendment bars suits directly against a state or its agencies, unless the state has waived its immunity or Congress has exercised its power under § 5 of the Fourteenth Amendment to override that immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989). Congress has not imposed § 1983 liability upon states, and the state of North Carolina has done nothing to waive its immunity. Bright v. McClure, 865 F.2d 623, 626 (4th Cir. 1989) (citing McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987)).

"[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Therefore, a lawsuit against an officer in his official capacity is, in substance, a claim against the governmental entity and should be subject to the same analysis. See Almone v. City of Long Beach, 478 F.3d 100, 106 (2d Cir. 2007); see Hutto v. S.C. Retirement Sys., 773 F.3d 536, 549 (4th Cir. 2014) (State officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State).

However, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." Will, 491 U.S. at 93 (quoting Graham, 473 U.S. at 167, n. 14). A prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986).

**(6)** **Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The existence of qualified immunity "generally turns on the 'objective reasonableness' of the actions" without regard to the knowledge or subjective intent of the particular official. Am. Civil Libs. Union of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 784 (4th Cir. 1993) (quoting Anderson v. Creighton, 483 U.S. 635, 639, 641 (1987)) (internal citations omitted).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims by determining whether: (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. While the sequence of the steps set forth in Saucier is "often appropriate," it is not mandatory. Pearson, 555 U.S. at 236. Judges are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Id.

To overcome the qualified immunity defense at the summary judgment stage, the plaintiff must have shown facts that make out a violation of a constitutional right, and the right at issue must have been "clearly established" at the time of the defendant's alleged misconduct. Thompson

v. Commonweath of Va., 878 F.3d 89, 97 (4th Cir. 2017) (citing <u>Pearson</u>, 555 U.S. at 232). The analysis takes place against the backdrop of two dueling interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson</u>, 555 U.S. at 231.

## III.    DISCUSSION

**(1)**    <u>**Access to Courts**</u>

Plaintiff appears to allege that he was unable to adequately research and present claims in his MAR and petition for writ of certiorari in state court, which resulted in the claims being procedurally defaulted on federal habeas review. He argues that, with additional legal resources, he could have raised claims that trial counsel was ineffective for providing him with incorrect caselaw in support of his motion to suppress and that this misadvice caused him to reject a favorable plea offer, and that the prosecutor engaged in misconduct during closing argument.

Plaintiff has failed to demonstrate that Defendants hindered him from presenting a nonfrivolous post-conviction claim. First, Defendants could not have hindered Plaintiff from presenting a claim of prosecutorial misconduct because such a claim could have been raised on direct appeal and he was represented by appellate counsel. Thus any alleged inadequacy of legal assistance or materials in prison did not affect his ability to raise such a claim on direct appeal. Second, with regards to alleged ineffective assistance of counsel in handling the suppression motion, Plaintiff cannot be heard to complain about counsel's performance because he chose to represent himself at trial. <u>See</u> <u>generally</u> <u>Faretta v. California</u>, 422 U.S. 806, 835 n.46 (1975) ("a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"); <u>see</u> N.C.G.S. § 15A–1243 (the

duties of standby counsel are limited by statute to assisting the defendant "when called upon and to bring to the judge's attention matters favorable to the defendant upon which the judge should rule upon his own motion."); <u>State v. Thomas</u>, 331 N.C. 671, 677, 417 S.E.2d 473, 477–78 (1992) (a defendant cannot claim ineffective assistance on the part of standby counsel beyond the limited scope of the duties assigned to such counsel by the statute or the defendant or voluntarily assumed by such counsel). The trial record reflects that three lawyers, the last of whom was appointed as standby counsel, refused to file a motion to suppress on Plaintiff's behalf. [4] Plaintiff nevertheless chose to pursue suppression *pro se* and lost. His claim that standby counsel's advice regarding the *pro se* suppression motion is, therefore, not nonfrivolous.[5]

---

[4] THE COURT: … Before we get into the motions [to suppress and dismiss], I just need to make sure. Before I start asking you any other questions, Mr. Mayweather, I just need to make sure that it is still your intention, sir, to represent yourself at all of these proceedings…. And the Court has previously appointed Mr. Minnicozzi as standby counsel. Do you understand what a standby attorney is and what a standby attorney does?
MR. MAYWEATHER: Yeah, pretty much, but not everything.
THE COURT: His only responsibility – he is not standby counsel to represent you.
MR. MAYWEATHER: Yes.
THE COURT: Do you understand that?
MR. MAYWEATHER: yes.
THE COURT: It is your duty to represent yourself.
MR. MAYWEATHER: Yes.
THE COURT: I need to find out, does anyone know whether or not he has thoroughly been advised as a *pro se* attorney?
MR. MINNICOZZI: He has by – was it Judge Hockenbury?
MS. COLEMAN: Hockenbury.
MR. MAYWEATHER: Yes.
MS. COLEMAN: Yes.
THE COURT: All right. So, you went through all that an answered all of the questions –
MR. MAYWEATHER: Yes.
THE COURT: – regarding –
MR. MAYWEATHER: Yes.
THE COURT: – your understanding of your representation?
MR. MAYWEATHER: Yes.
THE COURT: And you understand that Mr. Minnicozzi is only standby counsel for any specific issues that might arise that he may need to bring to the attention of this Court as a result of anything that might benefit you?
MR. MAYWEATHER: Yes.
THE COURT: But he is not to represent you in any way.
MR. MAYWEATHER: Yes.
(EDNC 5:16-hc-02251-BR, Doc. No. 18-21 at 5-80; <u>see</u> Fed. R. Ev. 201.

[5] Even if standby counsel could be deemed to have assumed the responsibility of informing Plaintiff about suppression law, Defendants would still be entitled to summary judgment on the access to courts claim because the

22

Moreover, the record demonstrates that Plaintiff had adequate access to post-conviction legal advice. NCPLS evaluated Plaintiff's case for post-conviction assistance and declined representation. (Doc. No. 44-8 at 1-2). An NCPLS staff attorney reviewed Plaintiff's court documents, appellate briefs and opinions, and the letters Plaintiff sent and found no legal basis to challenge his conviction. NCPLS advised Plaintiff that he could pursue MAR and federal habeas relief *pro se* and that a claim must be exhausted in an MAR or it will be procedurally defaulted from federal habeas review. (Doc. No. 44-8 at 2). NCPLS further informed Plaintiff that a successful MAR is ordinarily based on claims of discovery violations, newly discovered evidence and/or that "[y]our attorney was so ineffective that there is a reasonable possibility that his or her poor representation negatively affected the outcome of your case…." (Doc. No. 44-8 at 2). This evidence conclusively refutes Plaintiff's claims that he did not know about the availability of claims of ineffective assistance of counsel or the doctrine of procedural default. The record reveals that Plaintiff was able to file an MAR on his own behalf, that he received appointed counsel for the filing of an amended MAR, that he filed a petition for writ of certiorari, and that he also filed a federal habeas petition. His present claim for legal assistance that goes beyond the right to access the courts and essentially asks the Court to require the "conferral of … sophisticated legal capabilities" that would "effectively … demand permanent provision of counsel" which the Constitution does not require. <u>Lewis</u>, 518 U.S. at 354 (distinguishing <u>Bounds</u>).

Finally, to the extent that Plaintiff claims that he was not provided with typewriters or photocopying services, Plaintiff fails to demonstrate that any non-frivolous post-conviction or civil rights claim was hindered due to lack of these resources.

Defendants will therefore be granted summary judgment on Plaintiff's claim that he was

---

relief Plaintiff seeks goes beyond constitutionally adequate access to the courts.

denied access to the courts as no genuine dispute of material fact exists for trial.

**(2)**     <u>**Due Process**</u>

     **(A)**     <u>**Property**</u>

Plaintiff alleges that Defendants Banks and Swink confiscated his property in violation of NCDPS policy and that the policies at issue were created and enforced by Guice. Defendants have come forward with evidence that Defendant Swink was not involved in, or responsible for, searching or inventorying Plaintiff's property and that another officer conducted the inventory pursuant to NCDPS procedure, which provided Plaintiff notice and the opportunity to appropriately dispose of his excess property.

Plaintiff states in his summary judgment Response that he "does not wish to proceed with these claims against Banks or Swink." (Doc. No. 44-1 at 12). He does not attempt to refute any of Defendants' evidence.

Plaintiff has abandoned this claim against the two officers who allegedly searched and inventoried his property in violation of due process. Defendants have come forward with evidence demonstrating that no due process violation occurred and Plaintiff has failed to demonstrate the existence of a material dispute of genuine fact that a due process violation occurred at the hands of Banks and/or Swink, or at the supervisory level, Defendant Guice. Accordingly, Defendants' Motion for Summary Judgment will be granted on Plaintiff's due process property claim.

     **(B)**     <u>**Disciplinary Proceedings**</u>

Plaintiff alleges that Defendant Locklear violated his due process rights by refusing to consider a statement that Plaintiff gathered from another inmate and by sending Plaintiff to lockdown for six months for something he did not do.

Defendants have presented evidence that Plaintiff was provided notice of the disciplinary

charges, the right to a hearing, and the opportunity to defend the charges, that Locklear reviewed Plaintiff's statement and the statement of inmate Horne at Plaintiff's request, and that Locklear explained the charges and Plaintiff's disciplinary appeal rights to Plaintiff. Plaintiff was found guilty based on evidence submitted at the hearing including confidential information, witness statements, and photographs. Plaintiff was afforded an appeal.

Plaintiff does not appear to dispute any of the foregoing. Instead, he argues that Locklear should have additionally considered a second statement by Horne that Horne completed pursuant to Plaintiff's request after the two spoke about the incident in segregation.

Defendants' evidence shows that Plaintiff was afforded all the process that was due him in his disciplinary proceeding and that Locklear's finding of guilt was supported by at least "some evidence" including Plaintiff's statement and Horne's first statement. Plaintiff's claim that Locklear should have additionally considered a second statement by Horne that he completed at Plaintiff's urging, does not demonstrate the existence of a genuine dispute of material fact with regards to a due process violation. Summary judgment will therefore be entered in favor of Defendant Locklear on Plaintiff's due process claim.

**(3)** **Retaliation**

Plaintiff alleges that Defendant Auer charged him with the disciplinary infractions in retaliation for Plaintiff having filed a grievance about being denied access to the courts.

Defendants have presented evidence that Auer had Plaintiff placed in restrictive housing and charged him with disciplinary infractions because there was evidence that Plaintiff ordered a gang-related assault, and not due to retaliation.

Plaintiff does not attempt to refute Defendants' evidence. He states that, although he believed at the time that Auer had retaliated against him, Auer actually received false information

and was just doing his job. (Doc. No. 44-1 at 13).

Plaintiff has abandoned this claim against Auer, and Defendants have come forward with evidence demonstrating that no retaliation occurred. Accordingly, Defendant Auer will be granted summary judgment on Plaintiff's retaliation claim.

**(4)**     **Sovereign Immunity**

Plaintiff's claims for damages against Defendants in their official capacities are barred by sovereign immunity. See Almone, 478 F.3d at 106; Hutto, 773 F.3d at 549. Therefore, Defendants' Motion for Summary Judgment for damages will also be granted on that basis.

**(5)**     **Qualified Immunity**

Defendants argue that qualified immunity shields them from damages in their individual capacities because Plaintiff has not established a clearly established violation of law. Plaintiff has failed to demonstrate that any constitutional violation occurred, and therefore, Defendants are entitled to qualified immunity on that basis.

**IV.**     **CONCLUSION**

Based on the foregoing, Defendants' Motion for Summary Judgment will be granted and this case will be closed.

**IT IS, THEREFORE, ORDERED** that:

1.  Defendants' Motion for Summary Judgment, (Doc. No. 40), is **GRANTED.**

2.  The Clerk is respectfully requested to mail a copy of this Order to Plaintiff's address of record as well as to his attention at the Marion Correctional Institution, 355 Old Glenwood Road, Marion, NC 28752.

3.  The Clerk is instructed to close this case.

26

Signed: February 6, 2020

Frank D. Whitney
Chief United States District Judge